Well, we have this afternoon's packet. We'll start with in the, I'm sorry, in the Matter of the Application of the County Treasurer of Fayette County, Illinois v. Dome Tax Service, 519-0170. Counsel, when you're ready, you can approach. I've got an N on it. May it please the Court, Counsel, my name is Mark Morfland. I'm here on behalf of Dome Tax Service. I'm going to apologize in advance. I see that you were punished first thing this morning with the real estate tax case. And now, right after lunch, you're being punished again. So, I do apologize. We're going to attribute that to the clerk of our court. Don't get mad at me. My client attended the tax sale in Fayette County on November 16, 2015. He was awarded a tax sale certificate as the subject matter of his controversy. The period of redemption was set to expire, I believe, in November of 2018. He filed a tax deed on July 18, 2018. Everything was fine and dandy. Nobody redeemed. So, he filed an application for a warrant directing a county clerk to issue a tax deed. And on December 28, 2018, the Circuit Court of Fayette County entered into warrant directing issuance of tax deed. Then, at some point in December, right around mid-December, the county collector, I believe it was the county collector for Fayette County, sent a letter saying that she wanted to proceed with an administrative sale in there. And, although not listing a statutory reason for it, she did say that the individual owner of that subject leasehold did not get a tax bill. So, I sent a letter back to her saying, well, I'm sorry about that, but that's not a ground for an administrative sale in there or any sale in there under sections A, B, or C of 21-310 of the tax code. So, next thing you know, now this is after the order directing issuance of tax deed, which was December 28, 2018. Conversation happened in mid-December. But then in April, or I'm sorry, in January, she files in the Circuit Court of Fayette County a petition for administrative sale in there. Now, again, the administrative sale in there statute is contained in 35 ILCS 200-21-310 subsection C. So, when you get that petition filed, a hearing is held. Now, in looking at the petition that the Assistant State's Attorney filed on behalf of the county, it identifies itself as a petition for an administrative sale in there. It does not cite within that document what statute or what subsection of the statute they are proceeding under. But the name administrative sale in there invokes subsection C. In any event, we have a hearing. The State's Attorney admits during the hearing, in her closing arguments, that the basis for their request for a sale in there does not fit into any of the statute's reasons for a sale in there. But we're asking the court to, under principles of equity, to enter an order declaring a sale in there. And that was the basis in the written petition itself, and that was the basis throughout the hearing. My argument was very simple. When they're asking you to enter something based upon ethical principles, they're asking you to not follow the written law. This is exactly what this was. I had a similar question this morning in that I asked whether principles of equity could be used to enforce the intent of the statute. I don't believe so. In this case, I don't believe so. And the original petitioner of the county argued Thornton. On appeal, it is being argued Thornton, Thornton, Thornton, Thornton. And why isn't Thornton? Thornton versus Rosewell. Thornton versus Rosewell. Because that was back in í78, I think that case was decided. Back then, the sale in there statute was under 260, I think was the number. And it only had a few grounds for sale in there. And that was a unique factual situation in Thornton. And the court felt that equitable principles would be, should be applied, and it would be appropriate to apply them. That was in í78. Fast forward a few years, the Illinois legislature has significantly expanded the number of grounds or the bases for obtaining a sale in there. They've added a number of other bases. So then you come up to í92, Edgecombe v. Wolfe out of the 4th District. The court tries to throw in equitable principles in that case. And that appellate court refuses to follow Thornton. And the reason is Thornton was decided properly back then, but through reviewing the legislative histories of these new reasons for sale in there, the legislature has intended them to be exclusive remedies for a tax certificate holder or a county collector. It is exclusive. And I read exclusive to mean there ain't no room for equity. Here are the grounds for a sale in there. That's it. But, counsel, let me ask you a question. In our particular case here, I've got it. The order directing the issuance of the tax deed was entered December 28th of 2018, correct? Correct. And then the hearing, the motion set aside or the motion in error, and then the hearing was after the fact. There was no tax deed ever issued, correct? I cannot answer that. Okay. I don't know if my client ever recorded a tax deed or not. So let's say hypothetically that deed was never issued, never filed. Okay. Do we not have a case from actually authored by my esteemed colleague down there, Justice Overstreet, 218 Allot 5th, 170170, 2018, in writing application for tax deed as is property versus street at a saline county where it talks about equity and especially in cases where no tax deed has ever been issued. How can you square that argument you just made knowing there's this case out there? Well, I'm not familiar with the facts of that case, but I'm familiar with Edgecombe v. Wolfe out of the 4th District case where they say under 21.310, the saline air statute, that that is a mutually exclusive listing of the grounds that a petitioner may proceed under the saline air. It's mutually exclusive. And I interpret that to mean there is no room for equity. So a trial judge cannot sit there and say, I'm going to grant this on equitable grounds. No, you can't do that because this is an exclusive list of reasons for a saline air. This court almost went that far in Carousel Building Company v. Higgins. I interpreted that case to suggest that maybe they weren't interested in allowing equitable principles. But the whole basis of the county's request for an administrative saline air was that the person didn't get a tax bill. The tax bill went to the wrong individual who had no interest. I don't understand how someone who owns the property can lose the property when there have been no tax deeds recorded. In other words, the case that Justice Bowie was asking you about, you made a distinction. I also was in that case, and there was a distinction made as far as timing with regard to whether equity could be used to enforce the intent of the statute. And that's what I was getting at earlier. I'm sorry. Okay. So here we have a situation where the record doesn't say that a tax deed was issued or recorded. Correct. But you come before us and argue that there can't be a correction because statutory factors have not been met and that there's no deed. There's nothing for us to look at that gives your client a superior right, I should say. What my client has, as of the date of that hearing in April, my client has an order directing the issuance of a tax deed, which is no deed issued yet. That wasn't. And why would that have been? Is there some procedural reason that didn't happen, somebody filed a motion, or your client just didn't go forward with that? It's been my client's practice over the years. And, again, this isn't a lot of gas leaks, but it's a practice that they've engaged in for many years. If you immediately go and record a tax deed, many, many, many municipalities in the state of Illinois will jump on you. I know the community that my client's from and that I live in. The municipality city of Decatur has people that go down to the recorder's office and check dilapidated properties that they've already researched and know that a tax buyer has a certificate on it. And they wait until they record a deed. And then, boom, the city comes after them with ordinance violations. This way, if you wait, you market the property, you get an interested buyer, you sit down at closing, and you record the deed the day before the closing. The city's not coming after you to rehab. There's a big controversy. I don't mean to get off the point, a big controversy. My community started an administrative court, and the inspectors were informed to go bring low-hanging fruit. That meant landlords that had the money to repair all of these dilapidated buildings. Don't mess with anybody else. Get me the local landlords who've got the money. That includes tax buyers. So you don't record. We record eventually. I understand when you've got a buyer. They test waters first to see what interest there is in the property. It seems to be, and it's very fascinating, by the way, that little diversion. I'm sorry. No, don't be sorry. But I just wonder if there's an exposure to your client by not recording. Because that's the distinction that we did make in this case as is properties that Justice Foley referenced. It's not exactly the same issue, but it referenced the filing versus the non-filing of the deed. So it seems to me that your client has a risk by not requesting the issuance and recording of the tax deed. That could be possible if the underlying ground is recognized in the statute. Or if, now you're saying equitable principles could be applied because of the lack of the recording of the deed. But this mistake that was purportedly made by the collector, it's a mistake. But it's not a mistake recognized under the salient air statute. But why can't it be corrected? Because of the statute? I mean, is that the only reason? 35 ILCS 220-15, last sentence, says the failure and neglect of a collector to mail the bill, namely the tax bill, or the failure of the taxpayer to receive the bill shall not affect the validity of any tax or the liability for the payment of any tax. That's the property tax, right? That's not the mineral tax. It doesn't differentiate. No. But take it to its logical extreme, if you would. If this is affirmed, then that will become the standard for county collectors to come in. And this was, in effect, vacating over direct issuance of the tax deed. This order vacated, rendered void my client's certificate. And that's going to happen a lot more. And next thing you know, you're going to get litigation that's going to spring out under 2-1401. Wait until the original owner didn't get a tax bill back in 2013. So we've got to avoid this whole thing. But it even goes one step further. Go ahead. Go ahead. It goes one step further. By weakening the tax deed, by finding that equitable principles, if a person doesn't get a tax bill, then the whole process is void. Voidable. Voidable. Then you've got these title companies that are already scared to death to write title policies on tax deeds. And they go through these tax files with a fine-tooth comb, and you have to beg them to write a title policy. So now if we add a new dimension of no tax bill went to the taxpayer, which we all know happens tens of thousands of times in the state of Illinois, we've opened up a big can of worms, I think. That's my humble opinion. What do you think would have been the difference if the client would have filed for a tax deed? I'm sorry, what was that? So I've asked you about equity where there's not a filing of a deed. Do you think there would have been a difference under the statute if your client would have filed the deed? Because one of the public policy arguments where I'm going with this is finality. As you're saying, we don't want to open a can of worms here. And I think the case law is pretty clear that had the deed been filed, the law of finality really kind of takes over. And in this case, we keep asking you about that. You've not read yet. That's one of the issues is, you know, how do we get from finality to equity? And if you looked at the filing of the tax deed, that moment when it's filed, you know, do we have finality in the statute? Because as you say, we don't want to open up that. But here there was no filing and someone didn't receive notice. And actually, it's worse than that. The clerk put the wrong name in. Well, that's correct. So that person got a tax bill. Right. But the actual owner did not get a tax bill. Right, right. But then I'm suggesting 35, 200, 20-15. So what you're saying is the burden is on the taxpayer regardless of whether they get a notice or not. If it's their burden, they've got to come in and pay it. Two guarantees in life, death and taxes. Well, thank you. I'm asking that the case be reversed. Outright. Outright, yes. Thank you. Okay, Mr. Moreland, you will have a chance to rebuttal. Thank you. For your closing counsel. Is it Jabala? It is. Okay, thank you. May it please the Court. It's Jabala. John Jabala, Special Assistant State's Attorney representing Fayette County Group. I'm a treasurer. If I could, I'd like to address one or two things right off the bat. Albeit it wasn't in response to your question, Justice. Can you speak up a little bit? Forgive me. That mic doesn't mean anything. All right. It's recorded. Albeit it was in response to your question, counsel discussed Edgecombe v. Wolfe and then the Fourth District case of Higgins and some legislative history tracking past Thornton, none of which was raised in the brief. Okay, thank you for that. I would mention that out of the gate, so we're not necessarily prepared right now. I probably should be to discuss it, but I'm not. My apologies for that. You wouldn't have to be. Do you want the opportunity to respond to it? I don't think it's necessary. I think we briefed our position, and I think we'd be consistent with that. May we certainly give you the opportunity if you want to? Not at all. I think we'll proceed as we were going to. All right. We'll take note of that, though. Understood. Thank you. This case, and counsel also speaks about, you know, Thornton was a unique fact pattern. This is about as unique as I've seen. And the idea, you know, talk to the end of the counsel's argument, you know, with the breadth and the danger of this, you know, spiraling, I think unless we have these types of things with mineral parcels and we have a relatively exact same fact pattern, we're not going to see something like this. We've reported to either otherwise. I think this is a very unique situation where we have a confessed error, and I don't know the exact nature of the error, the system and the module, and how that was laid out. There were exhibits in the trial court. I didn't see that on the transcripts. I didn't get an opportunity to see exactly what the trial court saw and what the error was being explained by the State's attorney. But, you know, with the distinction the trial court made, Judge Kelly made, with real estate taxes, and I think we'd agree, I don't think we'd be defending this if it's real estate taxes, because you know, as counsel said, death in taxes. You get your real estate bill. You can't just assume you didn't get your property tax bill and go, good, I don't have to pay this year. Mineral interests are different. You know, below the $150 statute or amount, they don't have to go ahead and send you a bill. But the EAV is different. Do you have an obligation to call and find out, do you have to pay this year if you don't get a bill? I don't know. That wasn't raised, you know, necessarily to be addressed. You know, I have clients who have securities that are so de minimis they don't get a check. It's a couple pennies year to year to year. One year they don't get a check. They don't call and say, where's my check for seven cents? So I don't know the nature of the amount of the royalty that was coming off of the mineral parcel. Perhaps it was de minimis enough that Mr. Kersen wasn't going to go out of the way and find out, do I need the property tax to pay the tax on this this year? So I think it was, again, a very unique situation, a situation where equity was designed to prevent this kind of unjust loss of a right, a property interest. How do we get to equity, though, if we have a statutory scheme? I think when we talk about, and counsel discussed the section 21.310, and as we briefed, we don't believe necessarily that those are exclusive grounds for administrative sale in error. We think those are the grounds where, and I think we pointed out, where the sale shall be declared. But, and again, citing back to Thornton and the discussion of the Supreme Court, regardless of the, even the statutory number was different. I'll say that. I believe they referenced a different number. But the concept was the same. The same idea was that implying equity, the principle of equity, that we can go beyond this, what's in the statute, to remedy something that needs to be remedied. To address your question earlier, you know, can equity be implied? That's a fascinating question. It's the intent of a statute. And we have something along these lines. But here equity, I think, can be and has been used to excuse statutory, statute of limitations periods. And this is sort of along those lines. And, you know, because we have timing issues. I think when it was confessed below by the ASA, we have timing issues and, you know, we're outside the statute here. My impression reading the transcript is that was what the counsel was speaking of was the timing issue in particular, not necessarily confessing that there was no statutory basis for this. Because early in the transcript, counsel then discussed, you know, the kind of same thing we were discussing, the expansive nature of what Thornton's effect is on 21-310. So I think the Ministry of Sale and Error can be granted. The trial court was thoughtful in its order, acknowledged the difference between a middle parcel and a real estate parcel. And Ms. Cruzan had, you know, no idea what was going on here. Should she have? Perhaps. But at the same time, you know, this wasn't an ‑‑ if she made an error by not calling and finding out, do I owe something this year? Okay. But at this point, that's not necessarily the facts that we have. You know, she didn't get the bill. She wasn't expecting a bill because there apparently had been years where she wasn't getting assessed $150. This didn't seem like it was the first time this happened. So ‑‑ and we have a confessed clerical error. You know, we talk about harm. Counsel went on to some length about the sophistication of his client. I mean, this is a business that does this. They buy and sell taxes. They had an earnest counsel justice in detail as to why they record these, why they don't, why there's some things and some historical reasons as to why they proceed the way they do. They're going to be fine. You know, they're going to get money back, I believe, with interest. Don't quote me on that. I believe there's some mention below that they could. I looked at the statute and I couldn't be sure, but I think there was some discussion whether they would be put back in the status quo. You know, they will be able to go and redeem or, excuse me, purchase taxes from people who have proper notice, who choose not to redeem the taxes. That wasn't the case here with Ms. Cruzan. We mentioned Judge Overstreet's opinion. You know, to the extent this calls on you guys to interpret the statute, it's a de novo review, of course. And I think as Judge Overstreet said in that opinion, you know, to the point that the trial court exercised its discretion in imposing principles of equity on this case, it's an abuse of discretion standard. So we ask that you find, as the trial court did, imply principle of equity and return of property to Ms. Cruzan. So if you have no questions, I'm happy to answer anything, but we'd ask that you affirm the trial court's judgment. I do. Okay. Thank you. Thank you. Coming down from Chicago? Springfield. Springfield. Welcome. Thank you. Mr. Morthman. Thank you. Do you want closing comments? Just very briefly. You know, I believe that part of this is a matter of record. The actual owner of this oil and gas lease, she's never been around, didn't know anything about this. A tax buyer from southern Illinois who owns subsequent taxes on, I can't remember the number, 20 or 30 of these oil and gas leases, routinely goes to the county collector and says, Hey, you didn't mail a tax bill to all of these people, so you probably need to do something about it. That springs up the administrative sale in error. Subsequent tax holder slides up the ladder and becomes first, improves his or her position. I'm not following how that affects this. You don't think this case is unique on its backs? It's, yeah, somewhat unique. I would agree with that. Yes. Okay. And I also read Ed Cone v. Wolf and the Fourth District Appellate Court specifically said the remedies set forth in this statute are exclusive. Okay. Thank you very much. I just want you to know you're not our last data case today. Oh. Good. Thank you very much. This seems to be our day. I don't know. I don't know you were in court. I said I would get to do it. But okay. Thank you both. This matter will be taken under revise and appointed to a disposition in short order. Thank you for coming and making these arguments.